Madam Clerk, this is the 8-8-4. If I may, before I begin, to clarify the time and the sequence that the parties have worked out, I'll use 8 minutes, and then the plaintiffs will use 10 minutes, and then the State will use 8 minutes. I will use my remaining 4 minutes, and then the plaintiffs will use their remaining 10 minutes. Wow, I lost that. Say that again. Should I say it again? Okay. We're following the order of the briefs, so I will use 8 minutes. The plaintiffs will use 10. The State will use 8. I will use 4 for my rebuttal. You're the U.S., right? The United States, yes. Sorry. And the plaintiffs will use 10 for their rebuttal. It's almost as complicated as these regulations. Getting this exercised for the regulations. Madam Clerk, did you get all that? Yes, I did. Okay. We'll start off with 8. Okay. My clock still says 20, but okay. This case is about what happens when a State tries to provide benefits to people who would not otherwise be eligible for health care benefits. That's what Oregon and many other States are trying to do. And the question is, are they precluded from charging premiums and copayments, even though the very real possibility is that the result may mean no benefits at all or a significant cut in benefits? As I understand it, Portland Adventist requires us to treat the people in the spry category as though they were eligible, even though they're not. Is that correct? That's plaintiff's contention. But Portland Adventist was analyzing a different provision in a different statute, the Medicare statute, with a very different purpose. And just to look at the... Do you think it should be distinguished? Yes, Your Honor. I don't think the court in Portland... I'm distinguishing it because of its rationale, even though I'm skeptical about it and skeptical of the breadth of that. But if the court looks at the conclusion and much of the reasoning in Portland Adventist, it was very much driven by the purpose of the particular statutory provision that was at issue in that case. That's not at issue here. Can I ask you about the language? Because when you talk about the conclusion, right above the conclusion, they say the plain language of the statute requires us to conclude that Section 1115 does not confer on the Secretary discretion to characterize expenditures as Title 19 Medicaid expenditures, for some purposes and not for others. On the contrary, while the provision gives the Secretary discretion in approving projects, the provision requires the Secretary to regard expenditures under 1115 projects designed to assist low-income patients as Title 19 expenditures for the duration of such projects, and therefore to regard 1115 expansion populations as receiving medical assistance under a state plan approved by Title 19. It's the last part that says that we have to consider them as under a state plan, and then therefore you get into the 1396-0. No, no, that's exactly right. That's the plaintiff's argument. I understand it. The language is the same. But the plaintiffs want to take that language... Again, this Court was interpreting the phrase eligible under a state plan in a provision. And the reason the Court interpreted it that way, as the Court goes on to say, is the intent behind the statute, that all low-income populations be counted. Because, again, that's provision, the Medicare provision. But it doesn't say eligible. It says we have to treat them as receiving medical assistance, and I quote, as receiving medical assistance under a state plan. But implicit is within the meaning of that DSH provision. How can we have... The whole rationale of Portland Adventist seems to be you can't take the same phrase and give it different meanings in different contexts. And if we were to do what you're suggesting, we would take the idea of expansion populations in Portland Adventist and here, and give it a different meaning or a different result. Well, in Portland Adventist, the Secretary had already decided, going forward, to count this population for purposes of the DSH provision. And so the Court was saying, well, if you're going to do it going forward, you have to do it going backwards. It was the same provision. But there are lots of provisions in Medicare and Medicaid, maybe the same word, like co-insurance. But it has different meanings. So the Court can't just say, well, for purposes of this Medicare provision, we are going to treat them as if they were eligible under a state plan, even though, of course, they're not actually eligible under the state plan. And we have to take that, you know, that holding that applied to a different statute and a different provision, even though the language was the same. It's unquestionably a different provision. The same language, and you read it to mean different things in different statutes. You can identify something else that's different about the statute textually or something about the statutory purpose that justifies the different reading. And I'm not clear on exactly what it is about the difference in statutory purpose that, in your view, justifies a different reading of the same words. Okay. In Portland Adventist, the purpose, this Court says, was to increase Medicare reimbursements for hospitals serving a large number of low-income patients. And there's no question that the claimants are low-income. So that includes the expansion people in the plan, because you use the plan to figure out how much the hospital is going to get paid. Exactly. The Court said, you know, this Medicaid fraction is just a proxy for low-income. So it's a totally different question. There's no reason to think the Court in Portland Adventist was thinking about this question. Now here we are back in the real world of having a demonstration project, and are we financing the project or foreclosed? Because there's no question that that's the result. You said the purpose there is to shovel more money out of the U.S. Treasury into the hospitals that serve a lot of low-income people. You didn't get to say the second half. The purpose here, by contrast, is... Okay. So the purpose here is we have a Medicaid statute. No dispute that if we didn't have a demonstration project, these plaintiffs wouldn't be entitled to any benefits. So the question is, Oregon, 17 other states are trying to nonetheless provide benefits to people who otherwise don't have any statutory entitlement. And so the question is, are they foreclosed by some provision from charging the premiums and copayments that make it possible to provide these benefits? I understand what you said, but it wasn't grammatically parallel, and it looked as though you were avoiding saying the rest of the sentence. So the purpose here, by contrast... The general demonstration project purpose is to allow states to experiment with different ways of, in this case, providing health care benefits to low-income communities to see if there are different and better ways. Can we stretch Medicaid funds to provide coverage to different populations? If the agency wants to be able to go to Congress and say, look, though the statute reflects some assumptions about how direct benefits should be provided, there are actually other areas where we can cover even more people, and what they're trying to do is to use premiums and copayments to see if they can do that. I think we all understand that, but the question is, what would you say the rule of Portland Adventist is in one sentence? Portland Adventist holds that Medicare reimbursements to hospitals serving expansion populations are increased, or they count in figuring out if they should be increased. And isn't the reason because the expansion people are considered as part of the plan? Well, the more general reason is because they're poor. But they didn't say that because they're poor. I mean, that may have been the motivation, but... They do say that. In the DSH provision, the general purpose is for a hospital serving a disproportionate percentage of low-income persons. So the point is, then when you get down to the Medicaid, the way of figuring it out, that's supposed to be a proxy for low-income. But you still have to include those people as part of the state plan, or the hospital doesn't get coverage. That's right. For purposes of that provision, they have to be counted. But the question is, are you then compelled from Portland Adventist to say, yes, and even though it may well make the entire project impossible, that you're also precluded from charging the premiums and copayments that are needed? Your argument seems really to be, and I'm not criticizing your argument. Your argument is that Portland Adventist really wasn't properly decided. But we're left with... We're obviously assuming that Portland Adventist is properly decided. I mean, we disagree, but we understand it's governing precedent here. Am I right in thinking that in Portland Adventist, the money that gets taken out of somebody's pocket on account of it comes out of the U.S. Treasury? They can print money. And the money that comes out of somebody's pocket in this case, if you apply Portland Adventist to it, it either comes out of the state of Oregon's pocket, or the state of Oregon says, we don't want to spend this money, so we're jumping the demonstration project. Exactly. And just to confirm, on the excerpts of record at page 84, the state has an absolute right to terminate or suspend any part of its project at any time. The state pays for that? I didn't understand that to be the case. Now, back in our case, it's not Medicare. Medicare is fully federal, and loosely, the federal government could be compelled to pay more money. This is Medicaid. It's Medicaid funds. It's a joint federal-state program, and the state cannot be compelled to pay a penny to even run this project for expansion populations. They can end it tomorrow. And they don't get the federal matching funds. Exactly. No, no, that's right. They wouldn't get the matching funds. So it's the matching funds. That's what I was confused when you said the state paid, and I thought there was... Never mind. Well, it's the state that has to pay also, and it's the state that's on all sizes. I thought the match was just a part of the money, and the state still gets stuck with part. Yes, that's why it's matching. The state pays its half, loosely, and the federal government will match. This is 50. Yes, it varies in different states, but yes, that's generally the formula. I understand what you're saying, and maybe if I was reading the statute by myself, without Portland Invest at Ventus, there may be more force for your argument. But I can't see how you can put aside that case and say, well, that plan only applies to when we're talking about the provision for reimbursement of hospitals. It may have been that they didn't consider the effect of adjusting sort of the automobile one way as to how it's going to affect the running of it in another way. But still, it is what it is, and they're members of the plan, it seems to me, under Portland and Ventus. It goes back to that old proposition, in for a penny, in for a pound. Well, I mean, that's the question, because really it's, you know, Portland and Ventus, the consequence can be no expansion populations are covered. Hospitals aren't getting any more money then. Portland and Ventus becomes meaningless if expansion populations aren't covered. And again, the court went on and on about the purposes of the DSH provision, and so I don't think that the other language can be just wrenched out of that context, and said, well, Portland and Ventus, even though it didn't mean to, even though it wasn't thinking about this case, they said some things that we have to pull out of the Portland and Ventus context and put on, without thinking about congressional intent, to this context, even though the answer may be that nobody gets any benefits. Thank you, Crystal. Your Honors, I'm Jane Perkins from the National Health Law Program, and I am joined here today by Lori Freeman from Oregon Legal Services. Portland and Ventus controls the issue of whether or not these individuals are state plan populations. As Your Honor pointed out, the case holds that Section 1115 requires the Secretary to regard Section 1115 expansion populations as receiving medical assistance under a state plan approved under Title 19. The district court below applied and looked at Section 1115 in the context of the same language that we're talking about here, obviously, and ruled that there is a single waiver authority, and that these state plan populations are within it. In addition, the district court in Arizona, in a case called Newton Nations v. Thompson, at 316 Fedsup 2nd, has also held the same. 316 Fedsup 2nd, I think it's like 822 or 832, Newton Nations v. Thompson. On your class action argument, I couldn't see it. It looked like the district judge had two good reasons. Number one, his equitable relief would accomplish the same thing, whether it was granted without the class action or with it. And number two, more important, there were diverging interests in the class, because if you won, a lot of near poor people would, in all likelihood, lose the Medicaid they can get now, while some other near poor people would be better off, because they would get the Medicaid without premiums or copayments. What's the matter with this rationale? We recognize the abuse of discretion standard, but the rationale for both of these bases, the first one, that you don't need a class action, because the state has said in its argument that it will adhere to whatever the court rules, would ignore the reason for having a class action and having a B-2 class. The advisory notes to B-2 say that the purpose of that type of class action, which is what we have here, is to have broad perspective and injunctive relief to bind the state. And if that kind of argument during a hearing... If the injunctive relief can bind the state, I frankly have trouble seeing the difference except more attorney's fees if it's a class action. I'm not sure how there are more attorney's fees, but the difference is that you don't have the same notice protections. You don't have the guarantees of adequacy of counsel for individuals who aren't part of the class, and you don't have the guarantee that a future state official who is the head of the program will adhere to the ruling. The state official in this case has turned over three or four times since it was filed. We're relying on statements made during oral argument that the decision will be adhered to. On the second point... How would the class action change that? That would just include the plaintiffs. Sorry. Members of the class could then enforce the decision down the road if they could bring an enforcement action if the state did not adhere to what the court ruled. How does that answer the problem, though, of divergent interests? It seems to me that there are quite legitimate policy arguments on the other side of the arguments that you're raising that many people may believe that they're better off to have this demonstration project, to have benefits where they had none before, even at a small cost. It seems to me quite a stretch to say that the district court abused its discretion in saying that others might well disagree with this approach. That is the other prong upon which the court based its opinion, the adequacy of representation prong. There, the court relied, again, on the state defendant's arguments at the injunctive hearing relief. The record shows that Oregon put this program in place to expand benefits. There's no evidence in the record to show that anything about a cut in benefits. Medicaid has a number of optional eligibility groups and eligibility services. That's the way the program is set up. There are certain mandatory groups and services. There are certain optional groups and services. That type of argument would allow there never to be... These folks don't fit within any of those groups. They're an expansion population.  They're medically needy. They're not in any of those groups. There are people in that group that may very well feel that they are receiving a benefit that they want to continue to receive by virtue of this demonstration project. Correct. The state does not have to cover them, just as it does not have to cover individuals who are on Medicaid as optional, categorically needy people, or it doesn't have to cover any of the medically needy. What you said was that there's no proof that anyone in the class would be worse off because there's no proof that anything would change if there were no co-pays and no premiums. That strikes me as an economic absurdity. Any free good is going to get a lot more demand than if people have to pay the price of a pack of cigarettes to get the good. Two points on that. First of all, what I said I stated wrong. What I meant to say was that the record shows that they put this program in place only for purposes of expanding the program, not for generating additional funds to shore up the budget. The amicus brief filed by the AARP also gives examples of how co-payments have been shown through numerous studies to result in people deferring care that they need and costs actually going up as a result of the co-payments. That does not really respond to the issue of abusive discretion. It's saying that it is not clear that everyone shares your view or the view that the AARP has. That's the question that I want to get back to. That is that this expansion population in its form is similar to an optional eligibility group. A state does not have to cover many Medicaid recipients. It can decide to cover them today and decide not to cover them tomorrow. If in a lawsuit brought on behalf of those optional eligibility groups, the same argument would always apply. That is, it could always be a bar to class relief because the state could always have the discretion to eliminate the optional eligibility group. Whether you call it an expansion group or a medically needy group, which is also an optional group, or optional categorically needy group, there's a lot of discretion that the state has. Just because a person is in one of those groups and attempting to enforce the law does not automatically mean that when the state complies with the law, it's going to have to make decisions on how it complies with the law. So the fact that something might... I'm sorry. Go ahead. Say you're one of the people who says, look, this isn't the greatest system, but it's better than what I had before. I'm not going to go every time I have the flu or the cold because I'm not going to pay the copay. But if I have more serious matters, I can go. And there are certain things here where they don't charge a copay. They say, why are you doing this? You're really pushing the envelope. You're going to break the bank on this. I don't want to be part of this. And you're making all those people be part of it. Because your plaintiffs think it's better. What are you saying? Because number one, you want to make them part of it. And number two, you're saying the only reason to make them part of it is so if they get denied benefits, they can bring their own lawsuit to enforce the class action. But if they get denied benefits, if you continue to prevail, then they can bring their own lawsuit anyway and say it's collateral estoppel. So I don't see why you need the class action. And I can believe that there's at least one or more persons out there who say, we don't want you to push this hard. Well, the reason that we want the class action is because there are individuals out there who are being affected by heightened premiums and copayments. That could be good. Suppose you go to the doctor. You've got a serious problem. Your right leg's not working. You're just dragging it along. It's a real serious problem. And you go to the doctor that serves the near-poor people on this program. And you've got 16 people in a waiting room. And it's people with trivia. Somebody's saying, I had a headache three weeks ago, and I was thinking I ought to come in. Somebody else bringing her kid in because the kid has the sniffles and the hay fever season. Somebody else bringing her kid in because he's got the sniffles and it's not the hay fever season. And you say with your paralyzed leg, boy, I wish these people had to pay the doctor the price of a pack of cigarettes. Even half the price of a pack of cigarettes so that I wouldn't have to wait three hours for them. That's happened to me in the hospital emergency room. And I imagine it happens to near-poor people the same way. And they may have a real interest where they say, I'm willing to pay this fairly negligible copay. And I'm willing to pay the $8 or $10 or $12 a month in premiums because I don't want my access to services to be clogged up by people who say, yeah, what do I care, it's free. Well, I hear you. And Congress has struck a careful balance. One thing, however... Congress hasn't required a class action, and that's what we're talking about. I understand that. And I understand the abuse of discretion standard. I do want to point out, though, that these plaintiffs are not near-poor. All of them have income below the federal poverty level. And we are not arguing that they... They're not poor enough for Medicaid. Well, they are poor enough for Medicaid. They just don't look like a Medicaid person in some other respects. They're not eligible for Medicaid. They are either through this expenditure authority or through the waiver authority, as we have said. But they're not categorically needy or Medicaid within the Medicaid statute. Let me just respond to this question. The only reason we do the demonstration program is that they're not eligible for Medicaid. They are once the state decides to do the demonstration program, just like an optional eligibility group is eligible once they are running. We aren't arguing that they can't be charged copayments and premiums, Your Honor. I want to be clear on that. All we're saying is that the copayments and premiums should be limited to what Congress has set forth in the statute. Thank you. Could you address our last point first? On the issue of class certification? No. I'm sorry. The waiver provisions. The copay and premiums are too high under the statutory standard. I'd be happy to. Those statutory copayments and premiums are regulated under the statute only to the extent that they apply to either mandatory populations or optional populations. 1396-0A applies to a favored group of people and contains certain premium and copayment restrictions for those favored groups. The categorically medically I guess financial It's not quite as clear cut as that. What it refers to are people described in 1396-AA 10-A or E and 10-A actually includes 10-A actually includes under subdivision 2 certain optional populations. It's not exactly that 1396-0 B applies only to the optional populations. I didn't want to have the whole argument without getting to one of the major issues in the case and that is their argument that the state is limited to the expansion population to the copay and premium provisions that are provided for under the Social Security Act for everyone unless there's a waiver and the waiver can only be under 1390-0 F for basically two years. Fair enough but 1396-0 F your honor only refers to copayments it doesn't refer to premiums and at issue here for purposes of plaintiff's cross appeal are the premiums the state has accepted the district court's decision that the copayments must be stricken from OHP standard so what we're talking about here on plaintiff's cross appeal are just the premiums in OHP standard and they're governed by 1396-0 B-1 with language that tracks the premium quality but doesn't include the copayments and maybe I've got this wrong and I don't understand it but under 96-0 B and C you can charge premiums but they're limited that the amount can't exceed the limit established under paragraph 2 respect to individuals etc and aren't they contending that the Oregon plans premiums are higher? I don't think so your honor I think what they're saying is that 1396-0 B-3 applies and 1396-0 B sub 3 is the same language from 1396-0 F both of them tracking copayments not premiums the premium language is contained in 1396-0 B sub 1 and under sub 1 the only restriction is that the premiums have to be related to the person's income and maybe I totally misunderstood I thought that the Oregon plan has their scale is higher per month than the regular scale it says there may be imposed an enrollment fee premium or similar charge which in paren as determined in accordance with the standards prescribed by the secretary and I thought what they were saying is the secretary standards the dollar amounts per month were less well I think that's fair your honor and it's certainly true with respect to some of the these particular plaintiffs I think the important point to remember under 1396-0 B is that they aren't covered by that provision and I want to address that Portland Adventist question why aren't they covered? 1396-0 B only refers to state plans then we're back to where we started exactly and I want to address that question because I think it's a mistake to read Portland Adventist was simply about the plain and unambiguous language of section 1315-A-2 1315-A-2 compels the result in Portland Adventist because 1315-A-2 tells us that all expenditures under a demonstration program are to be deemed as though they are expenditures under the state plan that was all that was necessary to the result in Portland Adventist Portland Adventist has some language in it that might suggest that everyone who is in a demonstration project is in a state plan but that's not the holding of Portland Adventist I mean look we both can read this. I quoted it. It says what it says. Were you involved in Portland Adventist? I was not. I mean not you personally the state? No your honor because it seemed to me that if someone was concerned about that they could have made a motion for at least re-hearing and over-broad either the motion was never made or it was rejected but that's there I appreciate that and I probably ought not carry further on that the court's capable of deciding what Portland Adventist stands for but there's another important point that we haven't gotten to yet and that has to do with the existence of a federal right under 1396-O-B even if 1396-O-B in the abstract provided a federal right actionable through section 1983 for somebody it doesn't provide a federal right for these plaintiffs because these plaintiffs are not Medicaid beneficiaries as the court recognized what if they're deemed covered by the plan, the state plan then wouldn't they have the rights the same as Medicaid beneficiaries well I suppose if you make that assumption they would but if we look at 1396-O-B even assuming that there's no distinction to be drawn between people who are provided for by Congress and people who are provided for by Congress, 1396-O-B doesn't contain that explicit rights creating language that we're looking for, it doesn't unambiguously confer a federal right on anybody but even if we read Portland Adventist in its most broad sense, in the sense that the language at the end of the opinion might suggest that still doesn't mean that Congress intended in adopting passing 1396-O-B to cover this class of plaintiffs, they clearly didn't because this class of plaintiffs is foreign to the concept of Medicaid as the statute's written and this all comes back I think to the same thing, if you insert them as part of the plan then the plan beneficiaries have these rights Right, but here I think is the problem with jumping to the conclusion that they then have federal rights actionable under 1983, because these demonstration projects are created by the state, what you're hypothesizing is that the state is in control of granting federal rights to these individuals that is, they wouldn't have federal rights under the Medicaid statute except to the extent that they're covered in this demonstration project and that means that we're not really asking the question what did Congress intend whom did Congress intend if anybody, to grant federal rights to when it passed 1396-O-B rather we're asking the question can the state retroactively create that congressional intent by adopting an expansion or by adopting a demonstration project that includes these individuals I have a little trouble extending the authorities that you cite on this point to the proposition that you're trying to establish take Blessing vs. Freestone for example interesting case because we said that the statute creates an individual cause of action and the Supreme Court reversed, the reason they reversed was when you read the statute that purportedly created the private right of action no individual suing there was an advocacy group representing a bunch of individuals but none of them could count on getting a nickel cause all the statute said was that the secretary had to make sure the state was trying hard enough to collect money from deadbeat debt and there was no dollar standard and this statute by contrast with the statute and the federal regulations dollar amounts so at the end of the lawsuit you could say do the bookkeeping and send people checks for $7 and $12 and whatever the amounts were well I appreciate that your honor, I think the Blessing situation is the facts of it aren't going to track to the facts of this case I don't suggest that they are Blessing adopted a multi-part test that was clarified by Gonzaga and I think any reading of Blessing has to be understood through the lens of Gonzaga and in fact this court in several recent decisions has interpreted the Gonzaga Blessing relationship and decided either yes Congress did intend to confer federal rights or no Congress didn't intend to confer federal rights and it all turns on the language of the statute at issue and what we may glean about congressional intent from the language of the statute and because Congress when 1396 OB was added by the Tefra legislation in 1982 did not provide for expansion populations it would be anomalous if the state by including those expansion populations could somehow retroactively create a legislative intent to confer federal rights on them I think that's just the point that I'm trying to get across But don't people have private rights of action under 1983 if they're denied social security benefits, Medicaid benefits say they go to the hospital and the state says we're not covering you, they're clearly covered by the plan can't they bring an action? Yes they can, but that's because they are actually described in the Medicaid Act in some portion of the Medicaid Act that person has been protected by congressional language here when Congress passed 1396 OB Congress didn't provide for these people let alone when Congress passed 1315 1315 is another basis on which plaintiffs based across appeal and 1315 can't be read I think to encompass these particular plaintiffs even if it might somehow be read to confer federal rights in the abstract Thank you counsel Thank you Judge Monsowitz, if I could return to the question you opened with about the difference in the copayments they are higher under the demonstration project for example if you look at the excerpts of record at 49 it sets up the copays and just to give an example under the federal regulations copays can exceed $3 but under the plan for prescription drugs generics get charged $2 so that would be within the federal regulations brand drugs get charged $15 obviously to discourage use of brand drugs and channel people into generics and so the consequence of the district court's ruling is that that is foreclosed because the district court says no every aspect of the Medicaid copayment restrictions has to be picked up and put onto these expansion populations no matter what the consequence premiums are different as the district court recognized 1396 OF which restricts copay waivers doesn't apply to premiums this is addressing the cross appeal the plaintiffs are saying premium restrictions cannot be waived no matter what but that's wrong because the demonstration project statute says the secretary can waive the restrictions and requirements in 1396 A 1396 AA 14 incorporates by reference 1396 O and that's where the premium restrictions are found so I just want to make sure the consequences of this are enormous I want to ask a question about waiver the state takes the position that no waiver is required because this is not a population that otherwise would be covered by the statute that's actually our position well I've read a lot of briefs there has not been a waiver in a formal sense exactly our position was the secretary's view was no waiver was required so there was no formal waiver if the court decides there had to be a formal waiver then the secretary should be given the opportunity to do a waiver and we don't think the premium should be enjoined in the meantime because it's absolutely clear that the secretary can do a waiver an injunction is an equitable remedy and there's no reason to upset the entire ability of the state to provide these services by enjoining premiums when the secretary can do a waiver the waiver provisions of the statute have certain limitations that might alter the particulars of the program for example the duration I believe the waiver statute says two years and this program is five years if it applies wouldn't there have to be some potentially some changes let me clarify for premiums what your honor is referring to applies to co-payments for premiums it has nothing to do with the premiums can just be waived outright and so that's why this is where the bulk of the money is coming from co-payments or more about use I thought that if you lose on your no waiver is required argument then the right answer is under 1396 0F the secretary can waive co-payments for two years at a time and under 1396 0A then premiums are not restricted but that's only if you can distinguish Portland Adventist am I mixed up yes let me parse it out our principle argument is that none of these restrictions apply premiums or co-payments because this population is not eligible under state plan I realize that's where our Portland Adventist comes in if the court disagrees with our principle contention then the second question is well what can let's see um you're saying none of the restrictions apply period yes that's because they're not Medicaid eligible yes but I never have understood that it looked to me as though congress must have had some reason for providing for waivers for demonstration projects demonstration projects are for people that are not Medicaid eligible no demonstration projects can cover either this very project OHP2 covers categorically needy medically needy and expansion even for Medicaid eligible people and it would have something different from the rules on co-payments exactly so the whole point of that our reading the whole point this is long standing view the secretary's view of the waiver kicks in only when you're talking about people who are otherwise protected by the statute yes I think I understand what you're saying and maybe the two of us are thinking the same thing in terms of how this works but under I understand what you're saying about the co-pay and now we're talking about the premiums and 1396 OB talks about the premiums right yes and it says that you can impose a premium but the premium is limited to the secretary's schedule and the secretary's schedule has lower premiums than the Oregon schedule right yes so what would have to happen is the secretary would have to waive that provision so the Oregon premiums could work exactly plaintiff's cross appeal is entirely about whether the secretary may waive those premium restrictions and the answer is yes the secretary may because the secretary can waive any of the requirements of 1396 A and 1396 AA 14 incorporates by reference O I understand that but so then you said well if we agree the district court and the injunction stands that they still wouldn't have an effect because the secretary can waive but until the secretary waives isn't the rate higher than what's already established by the secretary on the 1396 OB precluded again it's injunctions and equitable remedy I understand the point but if as a practical matter it's clear that the secretary can waive and it's just for technical reasons because the secretary didn't think he had to waive and hasn't done so yet does the court have to enjoin everything even though it could throw the program into turmoil but if it hasn't been waived and we say it can be waived it has to be waived if you want to do this under Portland Aventis and it hasn't been waived then doesn't the injunction stand and they can tomorrow waive if they want when you say injunction stand the secretary the state hasn't been enjoined from charging premiums the district court you know accepting the matter we agree with their provision and we agree that it should be enjoined in that regard also if the court agrees are you saying not agreeing with the district court on the premiums you won on premiums lost on copay right? yes that's correct the court's not compelled to issue an injunction it's an equitable remedy and if it's clear that this can be waived and there aren't any restrictions on waiving then our view is the court still has discretion to say I'll remand to the secretary but I'm not at this point imposing an injunction if the secretary didn't waive then council what is realistically you may not know the answer to this but assuming we get to that point of saying a waiver is required it has to go back to the secretary for consideration of a waiver what is the realistic time frame during which that decision would have to be made I don't know I can try to find out and send in a letter but I don't know I just don't know what type of formal procedure is required and if there's any notice requirement and delays attendant with that we've got 17 other states with numerous separate programs that are all affected by this type of question so obviously the secretary will have to look at it if we disagree with you on this issue that there has to be a waiver would you agree that it would be useless to remand to the district court to determine if there was a waiver because you're saying there was we did not intend to waive I would love to say we did waive it but in fact that's not the agency's view. Do you have some procedure for granting an emergency temporary waiver while you're going through the notice and hearing? I don't know I'll find out the answer to these questions but I don't know the answer right now but let me also make clear though again this has to do with premiums and it really matters because premiums are being used to finance the program but as a practical matter if the court says Portland Adventist is controlling here then the states are not going to be able to charge this type of problem it's all the other aspects of 1396 OF which again this is part of our point though OF those Portland Adventist the copayment requirement Oregon plan is dead right and even if it were just two years because 1396 OF requires a showing such as the participation is voluntary unless the state assumes liability for preventable health care injuries and the state has to show that the benefits to the recipients would exceed any risks our point is that these provisions make no sense when you're talking about expansion populations they really only make sense when you're talking about people who are categorically eligible or medically needy and already covered and this is why Portland Adventist really doesn't apply in this context if you look at the provision 1396 OF that's the one that restricts the secretary's ability to waive the restrictions on copays and it makes sense when you're talking about people who can be covered by a demonstration project as we were just discussing categorically eligible medically needy people who are protected by the Medicaid statute but if you look this provision it's in the addendum to our blue brief 1396 OF but the specific requirements really they don't make any sense if you assume that if you try to impose them on expansion populations that's where I'm hanging up I never require when I read a statute that it's square with my own economic views to me it's just plain stupid to have no premiums and no copayments stupid not just for the governments but for the individuals who want medical care but my economic views don't matter and I don't quite understand suppose the congressman who passed this thing think it's just terrible that somebody poor or near poor should have to pay more than these nominal amounts as this regulation defines nominal much less than what we would in lay language call nominal suppose the congressman just think no one should have to pay money to go to the doctor beyond the should be close to free if the federal government is going to have anything to do with it why wouldn't it make sense if they took that view well congress certainly it's prerogative to take that view but I'm saying if you actually look at the provision on it's face well you can make sense of it as applied to people who are actually in the program the Medicaid recipients which are no we're not going to really use copayments to discourage use but it really does it makes sense because you could think of those people as being somehow worse off if you know they were in the program they're entitled to the benefits and you can imagine saying but we're not going to charge them copayments but or significant copayments but if you're talking about people who aren't even in the program then why make it so difficult for the state to provide it makes no sense because it would greatly deter demonstration projects yes that's right and particularly I mean as the court says unless there was a waiver at the time they approved the demonstration project well no again for a waiver for copayments has to satisfy all of these conditions of F and these conditions that make sense if you're talking about real Medicaid beneficiaries it makes it so difficult to even experiment to see well what happens if we want to charge $15 for brand drugs and only two for generics can we succeed in getting people really just to rely on generics and under the district courts ruling now this is not the cross appeal this is the ruling we're appealing that experiment is off the table because as a practical matter these requirements in OF are not going to be satisfied so the copay restrictions can't be waived the premium restrictions can be waived but the copay restrictions to try to take the Portland Adventist holding which dealt with a different provision in a different statute and say it compels a conclusion here notwithstanding OF it doesn't make sense of the structure of the scheme and notwithstanding the fact that even going back to the demonstration project statute all it says is that the costs of the project shall be regarded as costs under a plan it doesn't say there are costs under a plan it doesn't say these people are eligible under a plan so to get all the way from there through Portland Adventist where the secretary had made a policy decision to say I'm going to count these people for purposes of Medicare reimbursement and say by doing that you now indirectly have undermined these demonstration projects we just don't think it's compelled it's a disastrous result and the result is the same regardless of whether there's class certification these policy questions have come up in the context of class certification but as a practical matter if the state can't charge these they can't charge them so every person whether or not formally certified is going to suffer the consequences one last thing you're talking about our equitable power to structure a result ultimately we don't agree with you what would you suggest if the court thinks there needs to be a waiver for the premiums to be charged that the court direct a remand to the secretary to consider whether there should be a waiver the court can say in some reasonable amount of time in order to give the agency incentive to make it a priority without enjoining the premiums they get the declaratory relief but not the injunction and you think that if it stopped tomorrow if they were to prevail and it stopped tomorrow that the program would come to a halt I don't want to overstate it I don't know what would happen I know and here there really can't be any dispute if the court goes through the administrative record that there was a fiscal crisis Oregon initially had ambitions for expanding this program but instead ended up having to cut it it kept saying well we don't want to cut benefits for the categorically eligible so we're going to use premiums it would blink reality to suggest that the money is not going to come out of something and so rather than that happen we would say at least leave the status quo and allow the secretary to consider whether to waive and we would ask that that be clear because the government treats a declaratory judgment like an injunction and complies unless it's clear that we don't need to comply immediately We don't have any certainty that they'd cut it though I mean if they wanted to the legislature could impose a state income tax of 50% of whatever your income tax is to the feds and have enough money for it at least for a while It's right we have no certainty what we have is a history of the Oregon Legislative Emergency Board imposing cuts and no change in the financial situation so we certainly have a very real possibility that if not these plaintiffs then the money would come out of the benefits for pregnant women and children It's going to come from somewhere although I recognize the hypothetical possibility of a tax increase Thank you Kathleen Your Honor, just one point on Ms. Klein's last statement The Beano case says that the section 1115 statute was not enacted to enable states to save money but to test new ideas On the question of the waiver of premiums it's our position as you know that the premiums can't be waived that the way that section 1396-0 is organized it's structure, it's history it's language show that Congress did not intend for the premiums to be waived at all Doesn't that really support the government's theory that this is a population as to which no waiver is required because if it is non-waivable that makes sense in the context of the categorically needy and medically needy who are covered but doesn't necessarily make any sense with expansion populations for whom demonstration projects separate from that are intended Well, we have actually said in our brief that that point actually supports our position because the if you can not waive copayments the way the statute is set up you can't waive copayments except it's set forth in the statute and that protects categorically needy people. Well a premium is a much more onerous cost sharing device than a copayment when you experience a copayment it's something that you're paying at the time you seek the medical service with the premium it's something that you have to pay to get the coverage at all and the categorically needy and optional categorically needy and medically needy are all subject to premiums which are the much more onerous of the two. We feel that if you look through back to the O question AA14 does not incorporate section 1396 O by reference. The DC circuit court of appeals in the pharma decision looked at a similar question and noted that there are provisions outside of section 1396 A which cannot be waived and it gave as an example the 1396 R-8 which is a drug rebate program provision and also this provision in section 1396 O it said they cannot be waived it assessed the case under the R-8 analysis and thus did not need to look at whether or not the nominality was involved there but that is a circuit court that has already held that provision can't be waived when you look at how congress set that up and we've set it forth in our brief the 1115 statute predated Medicaid. When Medicaid was enacted in 1965 1396 AA14 was put in there and it had the substantive cost sharing provisions in it two cases were decided after that in the federal courts that waived copayments the male juvenile case or the juvenile male case from the 9th circuit court of appeals says that the congress is presumed to be aware of the relevant cases. Following the second of those two cases, congress amended the Medicaid statute it moved all of the substantive provisions for cost sharing out of section 1396 AA14 created a new section 1396 O it set forth a separate requirement that those provisions be in the state plan. In other words it required the state plan to have those provisions in it it set forth tightly circumscribed circumstances for when you can waive cost sharing and it only gave it two types of waivers that can be used for these tightly circumscribed demonstration waivers limited to two years that Ms. Klein was talking about and when there is non-emergency room use of the emergency room. Congress said you can charge twice the nominality amount for the cost for the outpatient services. Those provisions would not have been needed if the cost sharing statute could simply be waived as a result of being incorporated into AA14. Legislative history also supports the point where the congress said that they believe this bill gives the state sufficient flexibility in this regard to make further exercise of the secretary's demonstration authority unnecessary. Congress did not go back in and add O into 1115 as a waivable provision. Where congress has meant for or wanted premiums to be altered it has amended the Medicaid Act as recently as 1999 when it added a new section G to add premiums. Let me ask you another question that's been bothering me and I've been trying to figure out how to deal with this. This is an area that is extremely complex and esoteric both with regard or altogether with the regard of the legal framework the institutional framework the way hospitals and doctors charge and the economic framework what sorts of charges produce what sorts of practical effects. It seems like a particularly attractive one to defer under Chevron to an administrative agency that has a whole lot more expertise than a court and can also respond when it discovers it's made a mistake. The agency discovers it's made a mistake it can fairly quickly respond for a court to admit that it's made a mistake and do something about it is very cumbersome. It seems like if we take your approach we pretty much grab everything away from the administrative agency and tell them just how these demonstration projects are going to go and it's really tempting not to do that. Well of course we're saying that you don't need to get to the second step of Chevron because the statute is clear on its face. The statute on the face of it authorizes the secretary to publish regulations. The secretary could promulgate regulations tomorrow to increase the copayment amounts. Now the legislative history to the statute gives the secretary... It's not going to want to for the very poor people. All they want to do for the poorest people is make them put something on the table. Just something. Then the statute... They don't want to have to say that for somebody who has $3,000 a year he's a trapper that he has to put $30 on the table to go to the doctor. But for somebody that makes $13,000 a year or $16,000 or $23,000 it's different. Again, the legislative history accounts for the... instructs, if you will, the secretary if he is going to amend the regulations to take into account what is happening with basic living needs. On the face of the statute the secretary has the authority to promulgate regulations to change nominality or to increase those premiums that are in place. Again, Congress instructs to do so according to the individual's income. I wanted to ask you a question about that. You mentioned earlier subsection G of 1396-0. How does that section play into our analysis in your view? I think that it along with... There's another provision in there too. I think a couple of other provisions maybe 1396-0 C and D also address premiums and in our view that is showing that where Congress has wanted to address premiums it has not done so. It has done so in the statute either by setting the premium itself or in the case of O.G. allowing the state to do so. But it doesn't allow the state to do so in 1396-0-B. It says that it will be under the prescribed standards which are the regulations. If I could address the... I'm sorry. The state cannot use G in this situation because when you look at that statute there are sort of the introductory language to it gives a really long citation that I think may end in like Roman numeral 15 and Roman numeral 16. Roman numeral 15 I think is talking about both of those provisions are talking about some working disabled populations that states have the option to cover that because of their earnings are higher income than... That's correct. On the question of section 1983 enforcement we would simply say that under the court's recent cases both Price v. Stockton and the Sanchez v. Johnson decision and the dissent in the Ninth Circuit case in Blessing our provision is one that meets the test. The text and structure of the statute is crafted to toward individuals. It mentions the word individual repeatedly. Both Price and Sanchez the two most recent decisions have distinguished or used with favor a Third Circuit Court of Appeals case Sabry v. Richmond and in that case the court was looking at two statutory provisions that use the word individuals and so for example in the Sanchez case the court italicized the word individual and said those provisions are enforceable because they're directed at an individual and clearly here in our provisions Congress has repeatedly used the word individual. Thank you. Thank you. Well, we have enjoyed your very complex and interesting case. Thank you all for a good argument. Price v. Stockton is submitted and we're going to take a 10 minute recess before we move on.
judges: Kleinfeld, Graber, Moskowitz